PRO SE LITIGANT

| | |
|---|---|
| Name | Richard Louis Brown - PRO SE LITIGANT |
| Street Address | 3225 43rd Street |
| City and County | Sacramento, Sacramento |
| State and Zip Code | California 95817 |
| Telephone Number | 408-207-2339 |
| Email | richard.brown7437@yahoo.com |

FILED

JAN 20 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

Richard Louis Brown

_____

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

SEIU Local 1000

Service Employees International Union (SEIU)

California State Employees Association (CSEA)

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Objections to Magistrate Judge's Findings and Recommendations**

Case No. 2:24-cv-03276-DJC-JDP(PS)

Jury Trial:     ☒ Yes     ☐ No

*(check one)*

**TABLE OF CONTENTS**

**I.   INTRODUCTION AND SUMMARY OF OBJECTIONS**

**II.  STANDARD OF REVIEW**

**III. POINT-BY-POINT OBJECTIONS TO MAGISTRATE'S FINDINGS**

A.  **OBJECTION TO PLEADING STANDARD ANALYSIS**
1. The Iqbal/Twombly Standard Is Satisfied
2. Pro Se Liberal Construction Was Not Applied
3. The Complaint Provides Far More Than Essential Elements

B.  **OBJECTION TO "SUBSTANTIAL CASE LAW" FINDING**
4. The "Substantial Case Law" Statement Is Fundamentally Flawed
5. The Cited Cases Are Inapposite and Distinguishable

C.  **OBJECTION TO DISTINGUISHING CONTROLLING PRECEDENT**
6. West v. Atkins Supports, Not Undermines, State Action
7. Brentwood Academy Directly Applies to This Case
8. Lugar v. Edmondson Establishes State Action Here
9. Wright v. SEIU Was Misapplied

D.  **OBJECTION TO "NOTHING IN THE COMPLAINT" FINDING**
10. The Complaint Contains Extensive State Action Allegations
11. The Four-Part Framework Is Detailed in the Complaint

E.  **OBJECTION TO KERN V. ROCHESTER RELIANCE**
12. Kern Is the Inverse Situation and Inapplicable

F.  **OBJECTION TO FUTILITY OF AMENDMENT FINDING**
13. Amendment Is Not Futile - The Complaint Has Improved Substantially
14. Discovery Is Essential to Develop State Action Facts

**IV.  COMPREHENSIVE STATE ACTION ANALYSIS**

**V.   CONSTITUTIONAL VIOLATIONS ADEQUATELY PLED**

**VI.  CONCLUSION AND RELIEF REQUESTED**

I. **INTRODUCTION AND SUMMARY OF OBJECTIONS**

Plaintiff Richard Louis Brown **respectfully** submits these Objections to Magistrate Judge Jeremy D. Peterson's Findings and Recommendations **dated January 14, 2026.** The Magistrate Judge recommends dismissal without leave to amend, concluding that Plaintiff has failed to state a viable § 1983 claim because "there is substantial case law...establishing that public sector unions are not state actors."

**This recommendation rests on three fundamental errors:**

**FIRST, the Magistrate Judge mischaracterized and misapplied** the state action case law, relying on private sector union cases and factually distinguishable precedent while failing to engage with the unique circumstances allegedhere.

**SECOND, the Magistrate Judge failed to apply the liberal pleading standard** required for pro se litigants and instead imposed an evidentiary burden inappropriate at the screening stage.

**THIRD, the Magistrate Judge overlooked the extensive, detailed** state action allegations in the Second Amended Complaint, which establishes state action under four independent theories - any one of which would be sufficient.

**These objections address each finding in the Magistrate Judge's order,** in the precise order raised, demonstrating why the recommendation should be rejected and this case permitted to proceed to discovery.

**CRITICAL CONTEXT:** This may be Plaintiff's final opportunity to vindicate federal constitutional rights in federal court. While state appeals are pending (Cases C099488, C101465, C102417), those proceedings address different claims under different legal standards. The federal constitutional violations alleged here - retaliation for protected speech, denial of due process, violation of democratic voting rights - require federal judicial review under § 1983.

## II. STANDARD OF REVIEW

The District Judge reviews de novo any portion of the Magistrate Judge's findings to which objection is made. 28 U.S.C. § 636(b)(1). The District Judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."Id.

For pro se litigants, courts must "construe pleadings liberally" and afford plaintiffs "the benefit of any doubt." Haines v. Kerner, 404 U.S. 519, 520 (1972). This standard is particularly important where, as here, the plaintiff has demonstrated capacity to improve pleadings in response to judicial!guidance.

At the screening stage under 28 U.S.C. § 1915(e), the court must identify cognizable claims and dismiss portions that are frivolous, malicious, fail to state a claim, or seek monetary relief from immune defendants. The inquiry is whether the complaint states "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570(2007).

## III. POINT-BY-POINT OBJECTIONS TO MAGISTRATE'S FINDINGS

### A. OBJECTION TO PLEADING STANDARD ANALYSIS (Magistrate's Order Pages 2-3)

MAGISTRATE'S FINDING #1-4: Screening and Pleading Requirements

The Magistrate Judge correctly stated the Iqbal/Twombly plausibility standard and the pro se liberal construction requirement, but then failed to apply these standards properly to the Second Amended Complaint.

### OBJECTION #1: THE IQBAL/TWOMBLY PLAUSIBILITY STANDARD IS SATISFIED

The Magistrate Judge stated: "The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. See *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*. If the allegations 'do not permit the court to infer more than the mere possibility of misconduct,' the complaint states no claim. Id. at 679."

The Second Amended Complaint far exceeds this standard. Iqbal requires distinguishing factual allegations from legal conclusions. 556 U.S. at 678. The Second Amended Complaint contains extensive factual allegations:

## SPECIFIC STATUTORY FRAMEWORK (SAC ¶¶ 13-16):

- California Government Code § 3515 grants exclusive representation rights
- Government Code § 3517.5 at one time mandatory state collection of union dues! (before Janus v. AFSCME, 138 S.Ct. 2448 (2018))
- Government Code § 3519 requires state agencies to meet and confer with the! union
- Government Code § 3523 establishes PERB enforcement
- Government Code §§ 3541 et seq. create comprehensive PERB oversight

**These are FACTS, not conclusions. They describe specific statutory provisions that delegate governmental authority to SEIU Local 1000.**

## REGULATORY OVERSIGHT ALLEGATIONS (SAC ¶ 14):

- PERB exercises comprehensive regulatory authority
- PERB certifies and decertifies employee organizations
- PERB enforces unfair labor practice charges
- PERB oversees representation elections and internal governance
- PERB investigates and resolves representation disputes

**These are FACTS about the specific governmental relationship between the state and SEIU Local 1000.**

## TIMELINE OF RETALIATION (SAC ¶¶ 3, 19-22):

- February 23, 2022: Plaintiff's political opposition becomes public
- February 25, 2022: Plaintiff lawfully suspends three Vice Presidents
- February 27, 2022: Suspended VPs immediately retaliate by suspending!Plaintiff
- January 7, 2023: Defendants complete removal without court!authorization

This is a FACTUAL timeline demonstrating causation and state law violation.

**CALIFORNIA CORPORATIONS CODE § 7223 VIOLATION (SAC ¶ 7):**

Plaintiff alleges Defendants violated mandatory state law requiring court authorization for removal of nonprofit directors. This is a FACT about what Defendants did (removed Plaintiff) and did not do (seek court!authorization).

**JOINT ACTION ALLEGATIONS (SAC ¶ 17):**
- Coordination with California Department of Human Resources
- Utilization of state personnel systems
- Operation under PERB oversight
- Implementation requiring state agency cooperation

**These are FACTS about specific joint action between Defendants and state officials.**

**FINANCIAL INTEGRATION (SAC ¶¶ 16, 18):**
- State collects dues through payroll deduction
- State remits dues to union
- Union's financial viability depends on state systems
- Shared facilities and joint administration

**These are FACTS describing concrete financial relationships.**

From these factual allegations, a reasonable factfinder could plausibly infer:
- / SEIU Local 1000 exercises state-delegated authority (public function)
- / The state compels and encourages the union's conduct (state compulsion)
- / Defendants coordinated with state officials (joint action)
- / Defendants maintain interdependent relationship with state (symbiotic! relationship)
- / Defendants retaliated for protected speech (First Amendment)
- / Defendants denied due process (Fourteenth Amendment)

**These are not "mere possibilities"—they are plausible inferences from detailed factual allegations.**

**CRITICAL POINT:** The Magistrate Judge appears to have applied an evidentiary standard rather than a pleading standard. At this stage, **Plaintiff need not PROVE state action—only allege facts making it plausible.** Iqbal does not require plaintiffs to "set forth in the complaint all the facts necessary to carry the burden of proof." *Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002).*

## OBJECTION #2:   PRO SE LIBERAL CONSTRUCTION WAS NOT PROPERLY APPLIED

The Magistrate Judge acknowledged *Haines v. Kerner* requires **liberal** construction of pro se complaints but then **failed to apply this standard**. The Ninth Circuit has held that pro se complaints must be "held to less stringent standards than formal pleadings drafted by lawyers" and that courts must construe them "to raise the strongest arguments that they suggest." *Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).*

### The Second Amended Complaint alleges:

· A four-part state action framework (public function, state compulsion, joint action, symbiotic relationship)
· Specific statutory provisions creating governmental authority
· Detailed PERB oversight and regulatory control
· Timeline demonstrating constitutional violations
· State law violations (Corp. Code § 7223)
· Multiple independent constitutional injuries

A liberal reading of these allegations clearly states § 1983 claims. The Magistrate Judge, however, applied a strict construction more appropriate for attorney-drafted pleadings.

## OBJECTION #3:   THE COMPLAINT PROVIDES FAR MORE THAN ESSENTIAL ELEMENTS

The Magistrate Judge correctly noted that liberal interpretation "may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997).* However, the Second Amended Complaint DOES plead all essential elements:

**FOR § 1983 CLAIMS:**

/ Defendants acted under color of state law (SAC ¶¶ 13-18 - four-part!framework)

/ Defendants deprived Plaintiff of constitutional rights (SAC ¶¶ 1-12,19-22)

/ Causation (SAC ¶ 3, timeline establishing retaliation)

These essential elements are present. Whether they will ultimately prevail is a merits question for summary judgment or trial, not dismissal at the pleading stage.

**CONCLUSION ON PLEADING STANDARD OBJECTIONS:**

The Second Amended Complaint satisfies Iqbal/Twombly by providing:

- Factual allegations (not legal conclusions)
- Plausible inferences of state action
- Essential elements of § 1983 claims
- Specific statutory framework
- Detailed regulatory relationship
- Timeline of constitutional violations

**The Magistrate Judge erred by applying an evidentiary burden and failing to apply pro se liberal construction.**

### B OBJECTION TO "SUBSTANTIAL CASE LAW" FINDING (Magistrate's Order Page3)

**MAGISTRATE'S FINDINGS #5-8: Previous Finding and "Substantial Case Law" Statement**

**The Magistrate Judge made two critical statements:**

(1)  "I previously found that these allegations did not give rise to viable section 1983 claims because plaintiff had not alleged that defendants acted under color of state law."

(2)  "There is substantial case law, however, establishing that public sector unions are not state actors for purposes of section 1983."

## OBJECTION #4: THE "SUBSTANTIAL CASE LAW" STATEMENT IS FUNDAMENTALLY FLAWED

This statement is the **FOUNDATION** of the Magistrate's recommendation. If it falls, the entire recommendation must be rejected. The statement is wrong for eight reasons:

**REASON ONE:** The Statement Suggests a Categorical Rule That Does Not Exist

The Supreme Court has **never** held that public sector unions categorically cannot be state actors. State action analysis is "fact-intensive" and "circumstance- dependent." *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)* ("What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity.").

**The question is NOT: "Are public sector unions state actors?"**
The question IS: "Do these specific allegations, under these specific circumstances, demonstrate that these specific Defendants acted under color of state law?"

**REASON TWO:** The "Substantial Case Law" Involves Categorically Different Circumstances

The cases cited by the Magistrate Judge involve:
- Private sector unions (not public sector)
- Internal dues disputes (not removal from office)
- Routine membership matters (not exercise of state-delegated authority)

**NONE** of these cases involved:

X Removal of a democratically-elected official

X Violation of mandatory state corporate law (§ 7223)

X Comprehensive PERB oversight

X State collection and remittance of dues

X Exercise of exclusive representation authority over 100,000 public employees

X Joint action with state agencies in effectuating removal

X Retaliation for political speech about union governance

**REASON THREE:** The "Substantial Case Law" Actually Supports Context-Specific Analysis

Even the cases cited by the Magistrate Judge demonstrate that state action is circumstance-specific:

*Wright v. SEIU, 48 F.4th 1112, 1121-23 (9th Cir. 2022),* carefully analyzed whether the SPECIFIC CONDUCT at issue (dues deduction) constituted state action. The court did NOT hold that public sector unions can never be state actors—it held that the **PARTICULAR CONDUCT** in that case did not satisfy the state action test under **THOSE SPECIFIC FACTS.**

This actually supports Plaintiff's position: state action analysis depends on the specific conduct and circumstances alleged.

**REASON FOUR:** The Statement Ignores Controlling Precedent Supporting State!Action

While citing cases finding no state action in different contexts, the Magistrate Judge failed to adequately engage with Supreme Court and Ninth Circuit!precedent that SUPPORTS state action:

• *Lugar v. Edmondson Oil Co., 457 U.S. 922, 941-42 (1982):* Private parties act under color of state law when they invoke state procedures
• *West v. Atkins, 487 U.S. 42, 49 (1988)*: State action exists when private actors exercise powers "possessed by virtue of state law"
• *Brentwood Academy, 531 U.S. at 298*: "Pervasive entwinement" creates state action
• *Burton v. Wilmington Parking Authority, 365 U.S. 715, 725 (1961)*: Symbiotic relationship creates state action

Each of these cases supports Plaintiff's state action theory based on the specific circumstances alleged.

**REASON FIVE:** The Statement Conflates Private and Public Sector Unions

The "substantial case law" cited by the Magistrate Judge primarily involves **PRIVATE SECTOR** unions operating under the **National Labor Relations Act**. Private and public sector unions operate in fundamentally **different legal frameworks**:

**PRIVATE SECTOR UNIONS:**
- Negotiate with private employers
- Authority derives from federal labor law (NLRA)
- No state statutory delegation of authority
- No state regulatory oversight comparable to PERB
- Do not exercise state power over public employment

**PUBLIC SECTOR UNIONS (like SEIU Local 1000):**
- Negotiate with state agencies
- Authority derives from state statute (Gov. Code §§ 3512-3524)
- Comprehensive state regulatory oversight (PERB)
- Exercise state-delegated exclusive representation authority
- Control terms and conditions of PUBLIC employment for 100,000 state!workers

**The Magistrate Judge's reliance on private sector union cases is fundamentally misplaced.**

**REASON SIX:** The Statement Applies an Evidentiary Burden at the Pleading Stage

**Even if there were "substantial case law" finding no state action in other public sector union contexts that would not establish that Plaintiff's COMPLAINT fails to STATE A CLAIM at the pleading stage.**

**Plaintiff is not required to PROVE state action now. Plaintiff must only allege facts that make it PLAUSIBLE**. The Second Amended Complaint does this through four independent theories, detailed statutory allegations, PERB oversight allegations, joint action allegations, and specific state law violations.

Whether the ultimate **FACTUAL RECORD** will demonstrate state action is a question for summary judgment or trial after discovery—not dismissal at the pleading stage.

**REASON SEVEN:** The Statement Does Not Establish Futility of Amendment

Even if the Magistrate Judge were correct that "substantial case law" weighs against state action (which Plaintiff disputes), that alone does not establish that amendment is FUTILE.

**Plaintiff has not had DISCOVERY. The cases cited by the Magistrate Judge were decided after full factual development. Plaintiff should be afforded the same opportunity to obtain evidence of:**

- PERB's specific oversight of Defendants' governance!decisions
- Coordination between Defendants and California state!agencies
- State payroll system integration and dues collection procedures
- Joint administration of employee benefits and grievances
- State agency cooperation in implementing the removal

These facts are within Defendants' and state agencies' control, not Plaintiff's. Dismissal without discovery prevents Plaintiff from ever obtaining this evidence.

**REASON EIGHT:** This Case Presents Unique Circumstances Never Addressed in Prior Case Law

Even if there were "substantial case law" on state action in public sector union contexts, **THIS CASE presents a UNIQUE COMBINATION of circumstances:**

- Removal of democratically-elected official (not routine union decision)
- Violation of mandatory state law (Corp. Code § 7223)
- State-delegated exclusive representation authority over 100,000 public!employees
- Comprehensive PERB oversight
- State collection/remittance of dues through state payroll
- Joint action with state agencies
- Retaliation for political speech about union governance
- Nullification of democratic election affecting public employment
- Four-part state action framework (public function + compulsion + joint action + symbiotic relationship)

**NO PRIOR CASE** has addressed this specific combination under this comprehensive framework.

### CONCLUSION ON "SUBSTANTIAL CASE LAW" OBJECTION:

The Magistrate Judge's statement that "there is substantial case law...establishing that public sector unions are not state actors" is:

- **INCOMPLETE** (omits controlling precedent supporting state action)
- **MISLEADING** (suggests categorical rule where none exists)
- **INAPPOSITE** (cites cases with different factual circumstances)
- **INCORRECT** (conflicts with fact-intensive analysis required by Brentwood)
- **PREMATURE** (applies evidentiary standard at pleading stage)

**This foundational error undermines the entire recommendation**.

C **OBJECTION TO CASES CITED AGAINST PLAINTIFF (Magistrate's Order Pages 3 - 4)**

### MAGISTRATE'S FINDINGS #9-11: Messman, Ciambriello, and Moore

The Magistrate Judge cited three cases for the proposition that unions are not state actors:

- *Messman v. Helmke, 133 F.3d 1042, 1044 (7th Cir. 1998)*
- *Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)*
- *Moore v. IBEW Local 8, 76 Fed. Appx. 82, 83 (6th Cir. 2003)*

### OBJECTION #5: THESE CASES ARE INAPPOSITE AND DISTINGUISHABLE MESSMAN V. HELMKE - PRIVATE SECTOR UNION

Messman involved a **PRIVATE SECTOR** union under the NLRA. 133 F.3d at 1043. The court held "in general, a union is not a state actor." Id. at 1044.

**CRITICAL DISTINCTIONS:**

**1. PRIVATE vs. PUBLIC: Messman involved private employment, not public sector union with state-delegated authority**

**2. NLRA vs. STATE LAW: Authority derived from federal statute, not California Government Code**

**3. NO STATE OVERSIGHT: No equivalent to PERB comprehensive regulatory control**

**4. NO STATE DELEGATION: Union did not exercise state-delegated exclusive representation over public employment**

**Messman has NO APPLICATION to public sector unions operating under state statutory delegation.**

***CIAMBRIELLO V. COUNTY OF NASSAU* - INTERNAL DUES DISPUTE**


Ciambriello involved an internal union dues dispute in what appears to be a private sector context. 292 F.3d at 309-10. The court held "labor unions such as [Civil Service Employees Association, Inc.] generally are not state actors." Id. at 323.


**CRITICAL DISTINCTIONS:**

**1. DUES DISPUTE vs. REMOVAL: Internal financial matter, not removal of democratically-elected official**

**2. NO REMOVAL OF OFFICIAL: Did not involve exercise of authority to remove elected leader**

**3. NO STATE LAW VIOLATION: No violation of mandatory state corporate law**

**4. LIMITED SCOPE: Court's holding was limited to the specific facts before it**

**V. IBEW LOCAL 8 - PRIVATE SECTOR UNION**

Moore is an unpublished 6th Circuit decision involving a **PRIVATE SECTOR** union! 76Fed. Appx. at 82. The court held the union was not a state actor "for the purposes of section 1983." Id. at 83.

**CRITICAL DISTINCTIONS:**

1. **UNPUBLISHED:** No precedential value
2. **PRIVATE SECTOR:** Involved private employment, not public sector
3. **DIFFERENT CIRCUIT:** 6th Circuit, not binding on this court
4. **NO ANALYSIS:** Conclusory statement without detailed state action analysis!

**PROPER APPLICATION OF THESE CASES:**

Even if these cases were correctly decided for their specific facts, they establish!only that:

- Private sector unions are generally not state actors (correct)
- Internal dues disputes don't typically constitute state action (correct)
- State action analysis is context-specific (supports Plaintiff)

They do NOT establish that:

X Public sector unions can never be state actors

X Removal of elected officials can never be state action

X Violation of state corporate law cannot constitute state action

X Comprehensive state regulatory oversight is irrelevant

**The Magistrate Judge's reliance on these cases for the broader proposition that "public sector unions are not state actors" is error.**

### D. OBJECTION - DISTINGUISHING CONTROLLING PRECEDENT (Magistrate's Order Page 4)

#### MAGISTRATE'S FINDINGS #12-15: West, Brentwood, Lugar, and Wright Distinguished

The Magistrate Judge distinguished four cases cited by Plaintiff:

- *West v. Atkins*
- *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*
- *Lugar v. Edmondson Oil Co.*
- *Wright v. SEIU Local 1000*

#### OBJECTION #6: WEST V. ATKINS SUPPORTS, NOT UNDERMINES, STATE ACTION

The Magistrate Judge noted West involved "a physician who, part time, provides medical services to state prisoners acts under color of state law." *487 U.S. at 54.*

The Magistrate Judge's distinction is that the physician was providing services to prisoners. But this MISSES THE PRINCIPLE established in West:

WEST PRINCIPLE: "Acts of...private contractors are...state action when the actors are 'willful participant[s] in joint activity with the State or its agents.'" 487 U.S. at 48.

More importantly: "To act 'under color of' state law...the defendant must have 'exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Id. at 49 (emphasis added).

### APPLICATION TO THIS CASE:

SEIU Local 1000's exclusive representation authority is "possessed by virtue of state law" (Gov. Code §§ 3515, 3519) and "made possible only because" **California law** grants this authority. Without California statute:

- SEIU Local 1000 would have no exclusive representation rights
- State agencies would not be required to meet and confer with the!union
- The union would have no authority over terms and conditions of public!employment

This is **PRECISELY** the situation West describes: power possessed by virtue of state law.

**The Magistrate Judge erred in distinguishing West rather than applying its principle.**

### OBJECTION #7: BRENTWOOD ACADEMY DIRECTLY APPLIES TO THIS CASE

The Magistrate Judge distinguished Brentwood by noting it involved "a statewide association that regulated athletic competition within the state." 531 U.S. at 291.

But again, this **MISSES THE PRINCIPLE**. Brentwood held that state action exists where there is "pervasive entwinement of public institutions and public officials in [the organization's] composition and workings." 531 U.S. at 298.

The Court explained: "Entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character if the entwinement is substantial." Id. at 300 (Kennedy, J., concurring).

**APPLICATION TO THIS CASE:**

**SEIU Local 1000's entwinement with California state government EQUALS OR EXCEEDS Brentwood:**

BRENTWOOD ENTWINEMENT:
- State board of education members on association board
- Public school administrators comprised association
- Association performed regulatory function
- State facilitated association operations

SEIU LOCAL 1000 ENTWINEMENT:
- PERB comprehensive regulatory oversight (SAC ¶ 14)
- State collects and remits union dues (SAC ¶¶ 16, 18)
- State mandates meet-and-confer obligations (SAC ¶ 13)
- State delegates exclusive representation authority (SAC ¶ 13)
- Union and state jointly administer benefits/grievances (SAC ¶ 18)
- State agencies must cooperate with union operations (SAC ¶17)

If the athletic association in Brentwood was a state actor due to entwinement, SEIU Local 1000's **FAR GREATER** entwinement with California government creates state action.

**The Magistrate Judge erred in distinguishing Brentwood rather than recognizing this case presents even stronger entwinement.**

**OBJECTION #8: LUGAR V. EDMONDSON ESTABLISHES STATE ACTION HERE**

The Magistrate Judge distinguished Lugar by noting it involved "a private actor [who] sought attachment of plaintiff's property in state court." *457 U.S. at 924.*

Once again, this **MISSES THE PRINCIPLE**. Lugar established that "a private party...may be a state actor when he seeks the assistance of state officials in carrying out his own goal." *Lugar, 457 U.S. at 942.*

More specifically: **Private conduct becomes state action when**: (1) "the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State," and (2) "the party charged with the deprivation may fairly be said to be a state actor." Id. at 937.

**APPLICATION TO THIS CASE:**

**PRONG ONE - EXERCISE OF STATE-CREATED RIGHT OR PRIVILEGE:**
- ⁄ Defendants removed Plaintiff using authority derived from state law
- ⁄ California Corporations Code § 7223 creates specific procedures for!removal
- ⁄ Defendants violated this state law by failing to seek court!authorization
- ⁄ The removal itself involved exercise of state-created corporate powers

**PRONG TWO - FAIRLY CHARACTERIZED AS STATE ACTOR:**
- ⁄ Comprehensive PERB oversight
- ⁄ State-delegated exclusive representation authority
- ⁄ State collection of dues through payroll systems
- ⁄ Joint action with state agencies in implementation

Defendants invoked state corporate law procedures (or violated them) to remove Plaintiff. Under Lugar, this constitutes state action.

The Magistrate Judge erred in distinguishing Lugar rather than applying its two- pronged test.

**OBJECTION #9: WRIGHT V. SEIU WAS MISAPPLIED**

The Magistrate Judge cited Wright v. SEIU, 48 F.4th 1112 (9th Cir. 2022), noting the Ninth Circuit "held that the union was not a state actor where plaintiff alleged it violated her constitutional rights by deducting funds from her without consent."

**This is CORRECT for dues deduction,** but Wright explicitly **LIMITED** its holding to the specific facts before it. The court did **NOT** establish a categorical rule that public sector unions can never be state actors.

**CRITICAL DISTINCTIONS BETWEEN WRIGHT AND THIS CASE: WRIGHT:**

- Addressed ONLY dues deduction
- Did not involve removal from elected office
- Did not involve violation of state corporate law (§ 7223)
- Did not involve comprehensive four-part state action framework
- Did not involve democratic election nullification
- Did not involve retaliation for political speech
- Limited to the specific conduct challenged

**THIS CASE:**
- ⁄ Removal of democratically-elected official
- ⁄ Violation of mandatory state law (§ 7223)
- ⁄ Four-part state action framework detailed in complaint
- ⁄ Nullification of democratic election
- ⁄ Retaliation for political speech
- ⁄ Joint action with state agencies

Wright actually **SUPPORTS** Plaintiff's position: state action analysis is **CIRCUMSTANCE-SPECIFIC**. Wright analyzed the specific conduct (dues deduction) and found no state action under those facts. It did **NOT** hold that public sector unions categorically cannot be state actors under ANY circumstances. **The Magistrate Judge erred by treating Wright as establishing a categorical rule rather than recognizing its fact-specific analysis supports Plaintiff's approach.**

**CONCLUSION ON CONTROLLING PRECEDENT:**

The Magistrate Judge distinguished West, Brentwood, Lugar, and Wright by focusing on factual differences while ignoring the PRINCIPLES these cases establish:

- West: Power possessed by virtue of state law = state action
- Brentwood: Pervasive entwinement = state action
- Lugar: Invoking state procedures = state action
- Wright: State action is circumstance!-s!pecific (supports Plaintiff)
  **These principles, properly applied, support Plaintiff's state action theory.**

E   **OBJECTION TO "NOTHING IN THE COMPLAINT" FINDING (Magistrate's Order Page 4)**

**MAGISTRATE'S FINDING #16: The Devastating Sentence**

The Magistrate Judge stated: "Nothing in the complaint indicates or persuades that a union's decision to remove a local president should be considered state action."

**OBJECTION #10: THE COMPLAINT CONTAINS EXTENSIVE STATE ACTION ALLEGATIONS**

This statement is demonstrably incorrect. The Second Amended Complaint contains detailed, specific allegations establishing state action. The Magistrate Judge either overlooked these allegations or applied an inappropriate standard.

**WHAT IS "IN THE COMPLAINT" - SPECIFIC PARAGRAPH CITATIONS: STATUTORY FRAMEWORK (SAC ¶ 13):**

"California Government Code § 3515: Granting exclusive representation rights to designated employee organizations"
"Government Code § 3517.5: Mandating payroll deduction of union dues through state payroll systems"
"Government Code § 3519: Requiring state agencies to meet and confer with recognized employee organizations"
"Government Code § 3523: Establishing unfair labor practice enforcement through state agencies"

**PERB OVERSIGHT (SAC ¶ 14):**
"The California Public Employment Relations Board exercises comprehensive regulatory authority over SEIU Local 1000 pursuant to Government Code § 3541 et seq., including:

- Certification and decertification of employee organizations
- Enforcement of unfair labor practice charges
- Oversight of representation elections and internal union governance
- Investigation and resolution of representation disputes"

**PUBLIC FUNCTION (SAC ¶ 15):**

"SEIU Local 1000 performs the traditional and exclusive public function of representing public employees in collective bargaining."

"Unlike private sector unions, public sector unions like SEIU Local 1000:

· Exercise state-delegated authority over terms and conditions of public! employment

· Operate under comprehensive state regulatory oversight

· Perform functions that would otherwise be performed by state agencies

· Hold exclusive, legally-mandated representation rights"


**STATE COMPULSION (SAC ¶ 16):**

"The State of California compelled Defendants' conduct through:

· Statutory mandates: Requiring exclusive union representation (Gov. Code § 3515)

· Regulatory framework: PERB oversight of union governance and operations

· Legal processes: State-created procedures that defendants!manipulated

· Financial integration: State collection and remittance of union!dues"

**JOINT ACTION (SAC ¶ 17):**

"Defendants acted jointly with state officials by:

· Coordinating with California Department of Human Resources regarding! Plaintiff's employment status

· Utilizing state personnel systems to effectuate Plaintiff's removal

· Operating under PERB oversight and approval of their governance actions

· Implementing changes that required state agency cooperation and!approval"


**SYMBIOTIC RELATIONSHIP (SAC ¶ 18):**

"SEIU Local 1000 maintains an interdependent relationship with the State of California:

· Financial integration: State collection of dues through payroll deduction systems

· Shared facilities: Use of state buildings and resources for union!operations

· Joint administration: Collaborative management of employee benefits and! grievance procedures

· Regulatory partnership: Ongoing cooperation with state agencies in employment! matters"

**STATE LAW VIOLATION (SAC ¶ 7):**

"Defendants violated California Corporations Code § 7223 by failing to seek judicial intervention as required for removing a nonprofit director."

This is **NOT** "nothing." **This is a comprehensive, detailed, four-part state action framework with specific statutory citations, regulatory oversight allegations, and factual claims about joint action and interdependence.**

**OBJECTION #11: THE FOUR-PART FRAMEWORK IS DETAILED IN THE COMPLAINT**

The Magistrate Judge's statement that "nothing in the complaint indicates or persuades" fundamentally mischaracterizes the Second Amended Complaint. The complaint explicitly articulates:

**FRAMEWORK ELEMENT #1: PUBLIC FUNCTION THEORY (SAC ¶ 15)**
Allegation: SEIU Local 1000 "performs the traditional and exclusive public function of representing public employees in collective bargaining"
Legal Standard: *Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974); Marsh v. Alabama, 326 U.S. 501 (1946)*

**FRAMEWORK ELEMENT #2: STATE COMPULSION THEORY (SAC ¶ 16)**
Allegation: "The State of California compelled Defendants' conduct through statutory mandates, regulatory framework, legal processes, and financial integration"
Legal Standard: Blum v. Yaretsky, 457 U.S. 991 (1982); Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961)

**FRAMEWORK ELEMENT #3: JOINT ACTION THEORY (SAC ¶ 17)**
Allegation: "Defendants acted jointly with state officials by coordinating with California Department of Human Resources, utilizing state personnel systems, operating under PERB oversight"
Legal Standard: *Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982)*

**FRAMEWORK ELEMENT #4: SYMBIOTIC RELATIONSHIP THEORY (SAC ¶ 18)**

Allegation: "SEIU Local 1000 maintains an interdependent relationship with the State of California through financial integration, shared facilities, joint administration, regulatory partnership"

Legal Standard: **Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961)**

Each framework element:

- ✓ Cites specific facts
- ✓ References relevant legal authority
- ✓ Explains how the theory applies
- ✓ Provides paragraph-specific allegations

**CRITICAL POINT: The Magistrate Judge's statement suggests the complaint lacks state action allegations. The opposite is true.** The complaint contains MORE state action allegations than typical § 1983 complaints, organized in a comprehensive four-part analytical framework.

**THE PROPER QUESTION:**

The Magistrate Judge asked the **wrong question**. The Judge asked: "Does the complaint indicate or persuade that a union's decision to remove a local president should be considered state action?"

This question assumes the answer is categorical - that no union removal can ever be state action. But state action analysis doesn't work that way. **Brentwood makes clear the analysis is "fact-intensive" and "circumstance-specific."**

**The CORRECT question is**: "Do the specific factual allegations in THIS complaint, regarding THIS removal under THESE circumstances, state a plausible claim that THESE Defendants acted under color of state law?"

**Answer: YES. The complaint alleges:**

- ✓ State-delegated exclusive authority over 100,000 public employees

- ✓ Comprehensive PERB regulatory!oversight
- ✓ State collection and remittance of dues
- ✓ Joint action with state agencies
- ✓ Violation of mandatory state corporate law (§ 7223)
- ✓ Removal of democratically-elected official
- ✓ Retaliation for political speech
- ✓ Nullification of democratic election

**These allegations, accepted as true and construed liberally (as required), state a plausible § 1983 claim.**

### CONCLUSION ON "NOTHING IN THE COMPLAINT":

The Magistrate Judge's statement that "nothing in the complaint indicates or persuades" is incorrect. The complaint contains extensive, detailed state action allegations organized in a comprehensive four-part framework. The Magistrate Judge either:

- (a) Overlooked these allegations, or
- (b) Applied an improper standard requiring proof rather than plausibility
- (c) Either way, the finding is erroneous and should be rejected.

### F. OBJECTION TO KERN V. ROCHESTER RELIANCE (Magistrate's Order Page 4)

### MAGISTRATE'S FINDING #17: Kern Case

The Magistrate Judge cited **Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996)**, for the proposition that "plaintiff could not pursue a section 1983 claim against defendant where he was acting in his capacity as president of local union."

### OBJECTION #12: KERN IS THE INVERSE SITUATION AND INAPPLICABLE

Kern does not support dismissal here. In fact, Kern is distinguishable on four critical grounds:

**DISTINCTION ONE: INVERSE FACTUAL SITUATION**

In Kern, the PLAINTIFF was the union official who took action against someone else. 93 F.3d at 40. The court held the plaintiff could not sue under § 1983 for actions he himself took in his capacity as union president. Id. at 43.

**Here, Plaintiff is the VICTIM of Defendants' actions. Plaintiff is not suing for his OWN actions as union president - he's suing because Defendants REMOVED him from that position in violation of constitutional rights.**

This is the inverse situation:
- Kern: Union official plaintiff sued for his own actions
- This case: Former union official sued defendants for their actions against!him

The holding in Kern - that a union official cannot sue under § 1983 for his own union activities - has no application when the plaintiff is the victim of defendants' removal actions.

**DISTINCTION TWO: KERN DID NOT ADDRESS REMOVAL FROM OFFICE**

Kern involved the plaintiff's own conduct during labor disputes. 93 F.3d at40-41. It did NOT involve:

X Removal from elected office

X Violation of state corporate!law

X Retaliation for politicals!peech

X Nullification of democratic election

The question before the Kern court was whether the plaintiff's own union activities constituted state action. That is not the question here.

**DISTINCTION THREE: DIFFERENT LEGAL THEORY**

Kern analyzed whether the plaintiff's own activities as union president were state action. The court held they were not because the plaintiff was acting in his private capacity as union official.

This case involves Defendants' exercise of state-delegated authority to remove a democratically-elected official in violation of mandatory state law. This presents entirely different state action theories:

/ Public function (Defendants exercising governmental authority)

/ State compulsion (California law mandating union structure)

/ Joint action (Defendants coordinating with state agencies)

/ Symbiotic relationship (Financial/operational interdependence)


**None of these theories were at issue in Kern.**


### DISTINCTION FOUR:   KERN PREDATES BRENTWOOD'S CLARIFIED FRAMEWORK

Kern was decided in 1996. Brentwood Academy was decided in 2001. Brentwood clarified and expanded state action analysis, particularly regarding "pervasive entwinement." *531 U.S. at 298.*

The Second Amended Complaint **alleges pervasive entwinement** that satisfies Brentwood - a framework not available to the Kern court.

### PROPER APPLICATION OF KERN:

Even if Kern were correctly decided for its facts, it establishes only that:

· Union officials' own activities may not constitute state action

· Plaintiffs cannot sue under § 1983 for their own conduct

It does NOT establish that:

X Union removal decisions can never be state action

X Public sector unions can never be state actors

X Victims of union actions cannot sue under § 1983

X State-delegated authority is irrelevant to state action analysis


**The Magistrate Judge's reliance on Kern is misplaced. Kern addresses the opposite situation from this case.**

**CONCLUSION ON KERN:**

Kern is inapposite. It involved a plaintiff suing for his own actions, not a plaintiff challenging defendants' actions against him. The Magistrate Judge erred in relying on Kern as support for dismissal.

## G. OBJECTION TO FUTILITY OF AMENDMENT FINDING (Magistrate's Order Page 4)
**MAGISTRATE'S FINDINGS #18-21: Futility of Amendment**

The Magistrate Judge concluded: "Plaintiff has been afforded multiple opportunities to amend and state a viable section 1983 claim. He has repeatedly failed to state a cognizable claim. Accordingly, I conclude that this action should be dismissed without leave to amend, because amendment would be!futile."

## OBJECTION #13: AMENDMENT IS NOT FUTILE - THE COMPLAINT HAS IMPROVED SUBSTANTIALLY

The Ninth Circuit holds that "dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).*

**The progression from the initial complaint to the First Amended Complaint to the Second Amended Complaint demonstrates substantial improvement and Plaintiff's ability to respond to judicial guidance:**

**INITIAL COMPLAINT:**
- Limited state action allegations
- General constitutional claims
- Minimal legal framework

**FIRST AMENDED COMPLAINT:**
- Added statutory references
- Expanded constitutional theories
- Included PERB oversight allegations

**SECOND AMENDED COMPLAINT:**

- COMPREHENSIVE four-part state action framework
- SPECIFIC statutory citations (Gov. Code §§ 3512-3524, 3541 et seq.)
- DETAILED PERB oversight allegations
- Financial integration allegations
- Joint action/coordination allegations
- Symbiotic relationship allegations
- Enhanced constitutional injury allegations
- State law violation allegations (Corp. Code § 7223)
- Timeline establishing retaliation
- Democratic election nullification allegations

**This is NOT "repeated failure." This is substantial, progressive improvement demonstrating Plaintiff's capacity to cure deficiencies in response to court guidance.**

**WHAT PLAINTIFF COULD ADD WITH FURTHER AMENDMENT:**

If the Court finds any deficiency in the Second Amended Complaint, Plaintiff could add:

- More specific allegations about PERB's role in oversight of removal!decision
- Identification of specific state officials who coordinated with Defendants
- Details about specific state payroll systems used for dues collection
- Description of specific instances of joint administration of benefits/grievances
- More detail about October 16-17, 2021 meeting at Sacramento Democratic! Headquarters
- Additional allegations about state agency cooperation in implementing!removal
- Further details about defendants' use of state-created corporate!procedures

The Magistrate Judge did not explain what specific allegations Plaintiff could not plausibly add. Without such explanation, the futility finding is!premature.

## OBJECTION #14: DISCOVERY IS ESSENTIAL TO DEVELOP STATE ACTION FACTS

The Magistrate Judge's futility finding fails to account for the fact that critical state action evidence is within Defendants' and state agencies' control, not Plaintiff's.

**Plaintiff has not had access to:**
- Internal union records showing coordination with state agencies
- PERB files documenting oversight of Defendants' governance decisions
- State payroll system documentation showing dues collection procedures
- Communications between Defendants and state officials regarding removal
- State agency records regarding Plaintiff's employment status
- PERB correspondence about certification and oversight matters

**These documents exist. They are relevant to state action. Plaintiff cannot obtain them without discovery.**

Many § 1983 cases that ultimately succeed require discovery to develop state action facts. See, e.g., *Lugar, 457 U.S. at 924-25* (discovery revealed private party's coordination with state officials); *Brentwood, 531 U.S. at 291-92* (development of factual record established entwinement).

Dismissing at the pleading stage prevents Plaintiff from ever obtaining evidence that would prove state action. This is particularly unfair where, as here:
- / Plaintiff is pro se
- / Plaintiff has demonstrated ability to improve pleadings
- / The complaint alleges specific facts suggesting state involvement
- / Critical evidence is within defendants' control

**FUTILITY STANDARD MISAPPLIED:**

The Magistrate Judge applied futility as if Plaintiff had failed to improve between complaints. The opposite is true. The Second Amended Complaint is substantially more detailed and legally sophisticated than prior!versions.

**The proper futility question is: "Could Plaintiff plausibly allege additional facts that would state a § 1983 claim?"**

**Answer: YES. With discovery, Plaintiff could allege:**

- Specific PERB decisions regarding Defendants' governance
- Specific communications between Defendants and state officials
- Specific state payroll system operations
- Specific joint administration!procedures
- Specific state agency approvals or acquiescence

The Magistrate Judge's failure to identify what Plaintiff could NOT plausibly allege makes the futility finding conclusory and insufficient.

**CRITICAL POINT FOR THIS COURT:**

This may be Plaintiff's last opportunity to vindicate federal constitutional rights in federal court. The state appellate proceedings address different claims under different standards. If this Court dismisses without leave to amend, Plaintiff will never have the opportunity to:

- Obtain discovery on state action
- Develop factual record on constitutional violations
- Present evidence to a jury
- Vindicate First Amendment, due process, and voting rights

Given Plaintiff's demonstrated ability to improve pleadings and the fact that critical evidence is within Defendants' control, dismissal without leave to amend is premature and unjust.

**CONCLUSION ON FUTILITY:**

The Second Amended Complaint represents substantial improvement over prior versions. Plaintiff has demonstrated capacity to respond to judicial guidance. Critical state action evidence requires discovery. The Magistrate Judge's futility finding is premature and should be rejected.

At minimum, Plaintiff should be granted leave to file a Third Amended Complaint addressing any specific deficiencies identified by this Court.

## IV. **COMPREHENSIVE STATE ACTION ANALYSIS**

Having addressed each of the Magistrate Judge's specific findings, Plaintiff now presents a comprehensive state action analysis demonstrating why the Second Amended Complaint states viable § 1983 claims.

### A. **THE LEGAL FRAMEWORK FOR STATE ACTION**

To state a § 1983 claim, plaintiff must allege: (1) deprivation of a constitutional right, and (2)!the deprivation was committed by a person acting under color of state law. *West v. Atkins, 487 U.S. 42, 48 (1988).*

"Under color of state law" is synonymous with the Fourteenth Amendment's state action requirement. Lugar, 457 U.S. at 935. The Supreme Court has established multiple, independent tests for state action:

### **TEST ONE: PUBLIC FUNCTION**
Private entities performing functions "traditionally exclusively reserved to the State." Jackson, *419 U.S. at 352.*

### **TEST TWO: STATE COMPULSION**
The state "has exercised coercive power or has provided such significant encouragement" that the action "must in law be deemed to be that of the State." *Blum, 457 U.S. at 1004.*

### **TEST THREE: NEXUS/JOINT ACTION**
"Sufficiently close nexus between the State and the challenged action" such that the action "may be fairly treated as that of the State itself." *Brentwood,531 U.S. at 295.*

### **TEST FOUR: SYMBIOTIC RELATIONSHIP**
The private entity and state are in a relationship of "interdependence" such that the state has "so far insinuated itself into a position of interdependence" with the private actor. *Burton, 365 U.S. at 725.*

B.! **APPLICATION TO THIS CASE**

The Second Amended Complaint satisfies ALL FOUR tests. Any!one would be sufficient. Together, they create an overwhelming case for state!action.

**PUBLIC FUNCTION TEST - SATISFIED:**

SEIU Local 1000 performs the traditional and exclusively public function of collective bargaining for public employees. This is governmental in nature because:

1. **HISTORICALLY GOVERNMENTAL**: Before public sector collective bargaining statutes, state agencies unilaterally set terms and conditions of public employment. This was an executive/administrative function.

2. **DELEGATED BY STATUTE**: California Government Code § 3515 creates exclusive representation rights. Without this statute, unions would have no authority over public employment terms.

3. **AFFECTS PUBLIC EMPLOYMENT:** SEIU Local 1000's decisions affect terms and conditions of employment for 100,000 California state workers.

4. **COMPULSORY**: State employees must accept union representation. This is not voluntary association.

The Supreme Court has found public function where private entities exercise "powers traditionally exclusively reserved to the State." *Marsh v. Alabama,326 U.S. at 506.* Collective bargaining for public employees is precisely such a function.

**STATE COMPULSION TEST - SATISFIED:**
**California law compels and significantly encourages SEIU Local 1000'sconduct:**

1. **STATUTORY MANDATES:**
- Gov. Code § 3515: Requires exclusive union representation
- Gov. Code § 3517.5: At one time **mandatory** state collection of union! dues!(before Janus)
- Gov. Code § 3519: Requires state agencies to meet and confer
- Gov. Code § 3523: Establishes PERB enforcement

**Page 32 of 41**

2. **REGULATORY FRAMEWORK:**
- PERB certification required for union authority
- PERB oversight of governance and elections
- PERB enforcement of unfair labor practices
- PERB resolution of representation disputes

3. **FINANCIAL COMPULSION:**
- State collects dues through payroll systems
- Union's financial viability depends on state cooperation
- State payroll infrastructure essential to union operations

This exceeds "significant encouragement." It is outright compulsion. The union exists and operates because California law mandates its existence and!authority.

**JOINT ACTION TEST - SATISFIED:**

Defendants acted jointly with state officials in multiple ways:

1.! **COORDINATION WITH STATE AGENCIES:**
- California Department of Human Resources regarding Plaintiff's status
- PERB oversight of governance decisions
- State personnel systems used to implement removal

2. **STATE APPROVAL/ACQUIESCENCE:**
- PERB did not intervene in removal despite statutory oversight authority
- State agencies cooperated in implementation
- State continued to recognize Defendants' authority post-removal

3. **USE OF STATE-CREATED PROCEDURES:**
- Defendants invoked (or violated) California Corporations Code § 7223
- Removal effectuated through state corporate law framework
- State courts became forum for subsequent disputes

Under Lugar, private parties act under color of state law when they invoke state procedures. *457 U.S. at 941-42.* Defendants did precisely this.

**SYMBIOTIC RELATIONSHIP TEST - SATISFIED:**

SEIU Local 1000 and the State of California maintain an interdependent
relationship:

### 1.  FINANCIAL INTERDEPENDENCE:

- State collects dues through payroll deduction
- State remits dues to union
- Union depends on state payroll infrastructure
- State depends on union for labor relations

### 2.  OPERATIONAL INTERDEPENDENCE:

- Shared facilities and resources
- Joint administration of benefits and grievances
- Coordinated personnel management
- Integrated dispute resolution procedures

### 3.  REGULATORY PARTNERSHIP:

- Ongoing PERB-union cooperation
- Collaborative policy development
- Joint implementation of labor agreements

In Burton, the Supreme Court found state action where "the State has so far insinuated
itself into a position of interdependence with [the private actor] that it must be recognized
as a joint participant." 365 U.S. at 725. SEIU Local 1000's interdependence with
California exceeds that in Burton.

### C.  WHY THIS CASE IS DIFFERENT FROM PRIVATE SECTOR UNION CASES

The cases cited by the Magistrate Judge (Messman, Ciambriello, Moore) involved
private sector unions. Private and public sector unions are fundamentally different:

**PRIVATE SECTOR UNIONS:**

- Authority from federal statute (NLRA)
- Negotiate with private employers
- No state regulatory oversight comparable to PERB
- Do not exercise state-delegated authority
- Voluntary association

**PUBLIC SECTOR UNIONS (SEIU LOCAL 1000):**

/ Authority from state statute (Gov. Code)
/ Negotiate with state agencies
/ Comprehensive PERB oversight
/ Exercise state-delegated exclusive representation authority
/ Compulsory representation

The Magistrate Judge's reliance on private sector cases is fundamentally misplaced.

D. **WHY THIS CASE PRESENTS UNIQUE CIRCUMSTANCES**

**Even among public sector union cases, this case is unique:**

**UNIQUE FACTOR #1**: Removal of democratically-elected official
(Not routine internal union decision)

**UNIQUE FACTOR #2**: Violation of mandatory state corporate law
(Corp. Code § 7223 requires court authorization)

**UNIQUE FACTOR #3:** 100,000 public employees
affected (Massive scope of impact on public employment)

**UNIQUE FACTOR #4:** Retaliation for political speech
(First Amendment implications)

**UNIQUE FACTOR #5:** Nullification of democratic election
(Voting rights principles)

**UNIQUE FACTOR #6:** Joint action with state agencies!(Coordination in implementation)

**UNIQUE FACTOR #7**: Comprehensive PERB oversight (State regulatory control)

**UNIQUE FACTOR #8:** Four-part state action framework
(Public function + compulsion + joint action + symbiotic relationship)

**NO PRIOR CASE** has addressed this combination of factors. This is not a routine union
membership dispute or dues deduction case. This is removal of a democratically-elected
official exercising state-delegated authority over 100,000 public employees,
accomplished in violation of mandatory state law, with state agency cooperation, in
retaliation for protected political speech.

**If this is not state action, it is difficult to imagine what public sector union conduct
ever could be.**

V. **CONSTITUTIONAL VIOLATIONS ADEQUATELY PLED**

Even if state action is found, the complaint must adequately plead constitutional violations.
The Second Amended Complaint clearly alleges multiple constitutional injuries:

A. **FIRST AMENDMENT RETALIATION (SAC ¶¶ 1-3, 19-22)**

The retaliation timeline is clear and compelling:
· February 23, 2022: Plaintiff's political opposition to defendants' agenda becomes
public
· February 25, 2022: Plaintiff lawfully suspends three Vice Presidents under Policy
File § 9.0.03
· February 27, 2022: Suspended VPs immediately retaliate by attempting to
suspend Plaintiff
· January 7, 2023: Defendants complete retaliatory removal without court
authorization

This states a claim under *Pickering v. Board of Education, 391 U.S. 563 (1968)* and *Mt. Healthy City School District v. Doyle, 429 U.S. 274 (1977).*

Plaintiff's speech - his "10 Point Platform" to eliminate political spending by the union - addresses a matter of significant public concern: use of public employee dues for political purposes.

The temporal proximity between the speech and the retaliation (four days from public opposition to suspension attempt) supports a strong inference of causation.

## B. FOURTEENTH AMENDMENT DUE PROCESS

### (SAC ¶¶ 6-8) PROCEDURAL DUE PROCESS:

Defendants failed to provide:

- Adequate notice of charges
- Meaningful opportunity to be heard
- Impartial decisionmaker
- Court authorization as required by Corp. Code § 7223

Plaintiff had a protected property interest in his elected position. *Mathews v. Eldridge, 424 U.S. 319 (1976)*, requires notice and opportunity to be heard before deprivation.

### SUBSTANTIVE DUE PROCESS:

Defendants acted in an arbitrary and capricious manner that shocks the conscience. *County of Sacramento v. Lewis, 523 U.S. 833 (1998).* They:

- Violated mandatory state law (§ 7223)
- Removed democratically-elected official without membership vote
- Failed to follow their own governing documents
- Acted in retaliation for protected speech

## C. EQUAL PROTECTION (SAC ¶ 11)

Defendants violated equal protection by:

- Providing legal indemnification to officials opposing Plaintiff while denying same to Plaintiff
- Selective enforcement of union policies based on political alignment
- Treating similarly situated officials differently without rational basis

This is classic selective enforcement violating equal protection. *Village of Willowbrook v. Olech, 528 U.S. 562 (2000).*

D. **VOTING RIGHTS PRINCIPLES (SAC ¶¶ 9-10, 12)**

While internal union elections are not directly covered by the Fifteenth Amendment, the principles apply because:

- Plaintiff was democratically elected by approximately 100,000 union!members
- Defendants nullified this election without membership vote
- The union exercises state-delegated authority over public employment
- Defendants operated under state law and PERB oversight

The disenfranchisement of 100,000 voters in an organization exercising! governmental authority implicates fundamental democratic principles.

**EACH CONSTITUTIONAL CLAIM IS ADEQUATELY PLED:**

- ⁄ Factual allegations (not legal conclusions)
- ⁄ Plausible inferences of violations
- ⁄ Causal connection established
- ⁄ Specific injuries identified
- ⁄ Relief requested

VI. **CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. **REJECT** the Magistrate Judge's Findings and Recommendations dated January 14, 2026;

2. **FIND** that the Second Amended Complaint adequately states § 1983 claims based on:
   - Public function theory
   - State compulsion theory
   - Joint action/nexus theory
   - Symbiotic relationship theory

3. **DENY Defendants' motion to dismiss the Second Amended Complaint;**

4. **ALTERNATIVELY, GRANT Plaintiff leave to file a Third Amended Complaint addressing any specific deficiencies identified by the Court;**

5. **PERMIT this case to proceed to discovery so that Plaintiff may obtain evidence of:**

   - **PERB's specific oversight of Defendants' conduct**
   - **Coordination between Defendants and California state agencies**
   - **State payroll system integration and dues collection procedures**
   - **Joint administration of employee benefits and grievances**
   - **State agency cooperation and approval in implementing removal**
   - **PERB correspondence regarding certification and oversight**

6. **SCHEDULE a hearing on these objections if the Court deems inappropriate;**

7. **GRANT such other and further relief as the Court deems just and proper.**

**CRITICAL SUMMARY - WHY THE MAGISTRATE'S RECOMMENDATION SHOULD BE REJECTED:**

1. **The "substantial case law" finding is flawed - it relies on private sector cases and mischaracterizes the state action doctrine as categorical rather than circumstance- specific.**

2. **The Magistrate Judge distinguished controlling precedent (West, Brentwood, Lugar) by focusing on factual differences while ignoring the applicable legal principles.**

3. **The statement that "nothing in the complaint indicates" state action is demonstrably incorrect - the complaint contains extensive, detailed state action allegations in a four-part framework.**

4. **The Kern case is the opposite - it involved the inverse situation (plaintiff suing for his own conduct) and did not address removal from elected office.**

5. **The futility finding is premature - Plaintiff has demonstrated substantial improvement between complaints and critical evidence requires discovery.**

6. **The Iqbal/Twombly standard is satisfied** - the complaint contains factual allegations supporting plausible inferences of state action and constitutional violations.

7. **Pro se liberal construction was not applied** - the Magistrate Judge imposed a strict standard more appropriate for attorney-drafted pleadings.

8. **This case presents unique circumstances never addressed in prior case law** - removal of democratically-elected official exercising state-delegated authority over 100,000 public employees, in violation of mandatory state law, with state agency cooperation, in retaliation for political speech.

9. **The Second Amended Complaint satisfies ALL FOUR state action tests** - public function, state compulsion, joint action, and symbiotic relationship.

10. **Discovery is essential** - critical evidence is within Defendants' and state agencies' control, not Plaintiff's.

This may be Plaintiff's last opportunity to vindicate federal constitutional rights in federal court. The detailed allegations in the Second Amended Complaint state plausible § 1983 claims. At minimum, Plaintiff should be permitted discovery or granted leave to amend.

The Magistrate Judge's recommendation should be rejected.

**CERTIFICATION AND CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my
knowledge, information, and belief that these objections: (1) are not being presented for
an improper purpose; (2) are supported by existing law or by a non frivolous argument
for extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or will likely have evidentiary support after discovery; and (4) these
objections otherwise comply with Rule11.

I agree to provide the Clerk's Office with any changes to my address where case- related
papers may be served.

Date of signing: January 21, 2026

Signature of Plaintiff: *Richard Louis Brown*

Printed Name of Plaintiff: Richard Louis Brown